## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CORY BALOCCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 15-1036-JWL |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income benefits (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for SSI benefits, ultimately alleging disability beginning June 29, 2012. (R. 12, 34). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the Administrative Law Judge (ALJ) failed to link the evidence with his residual functional

capacity (RFC) limitations, erred in weighing the medical opinions and consequently relied on stale opinions, and failed to conduct a proper credibility analysis of Plaintiff's allegations of disabling symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

2

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

3

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error as alleged by Plaintiff.  It addresses each argument in the order presented in Plaintiff's Brief.

## II.    RFC Assessment

Plaintiff's allegations of error in the RFC assessment are not particularly clear. However, the court perceives Plaintiff to allege that the ALJ merely summarized the evidence rather than linking the evidence with the RFC limitations he assessed.  (Pl. Brief 21-22).  Plaintiff also claims that the ALJ erroneously relied upon stale medical opinions provided by non-examining state agency consultants.  Id. at 22.  He argues that reliance is erroneous because Plaintiff's condition deteriorated after the opinions were provided as is demonstrated by the fact that he was later prescribed a wheelchair by his treating physician, Dr. Penn.  Id. at 22-23.  Plaintiff claims the ALJ erred in according no weight to Dr. Penn's opinions, and compounded the error by failing to recontact Dr. Penn to clarify his opinions.  Id. at 23-26.

The Commissioner argues that the ALJ reasonably articulated the evidence supporting his decision (Comm'r Br. 3-4) and is "not required to use the phrase 'I find' to connect each conclusion with the evidence."  Id. at 5.  She argues that the ALJ reasonably weighed the opinion evidence and that the evidence supports his findings in that regard. (Comm'r Br. 6).  She argues that the evidence will not support a finding that Plaintiff's condition deteriorated after the state agency consultants provided their opinions.  Id. at 7.

She argues that contrary to Plaintiff's assertion, the ALJ did not find Dr. Penn's opinion was vague, and there was no need to recontact that physician.  Id. at 8-9.

### A.    Standard for Evaluating RFC

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.945(a); see also, White, 287 F.3d at 906 n.2.  It is an administrative assessment, based on all the evidence, of how a plaintiff's impairments and related symptoms affect his ability to perform work related activities. Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2015) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2015) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").  The Commissioner provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2015).

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. § 416.927(e)(2), 416.946.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2015). The ruling includes narrative discussion requirements for the RFC assessment. Id. at 149. The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of

6

medical opinions regarding plaintiff's capabilities.  Id. at 149-50.  If the ALJ's RFC

assessment conflicts with a medical source opinion, the ALJ must explain why he did not

adopt the opinion.  Id. at 150.

    **B.**      **Analysis**

    Plaintiff's Brief suggests that the ALJ merely summarized the evidence and did not

"link the evidence with the limitations in the RFC."  (Pl. Brief 21-22).  The court does not

agree.  As Plaintiff suggests, the ALJ did summarize the record evidence in his decision.

And, his discussion is sufficiently specific to make clear to the reader the bases for his

RFC assessment.  Moreover, in addition to his summary, in his RFC discussion the ALJ

also specifically related certain evidence to the RFC limitations he assessed.  For

example, the ALJ noted that Plaintiff's narcotic medications result in "some sedation,

which contributes to the environmental and mental limitations described in the [RFC

assessed] above" (R. 18), he noted that Plaintiff's "visual impairment warrants a finding

that he is limited to occupations that only require frequent peripheral vision or field of

vision on the right side, as well as a finding that he should avoid workplace hazards, such

as unprotected moving mechanical parts and unprotected heights" (R. 19), and he noted

that he found it "appropriate to limit [Plaintiff] to simple, routine, repetitive tasks as

described above," because of the combined effects of Plaintiff's physical and mental

impairments and his use of narcotic medications.  (R. 21).  The ALJ provided an

explanation of his RFC assessment and linkage to the record evidence which is sufficient

for a reviewing court to follow his reasoning.  More is not required.

Plaintiff claims it was error for the ALJ to accord "considerable weight" to the opinions of the non-examining state agency consultants, Dr. Raju and Dr. Stern, because their opinions were formulated on June 14, 2013 (R. 99, 101), but Plaintiff's condition deteriorated thereafter, and he was prescribed the use of a wheelchair on July 21, 2014. (R. 714).  While Plaintiff is correct that Dr. Penn prescribed a wheelchair on July 21, 2014, the evidence does not support the inference that his condition deteriorated after June 14, 2013.  The ALJ explained his finding is this regard:

> Although the claimant was prescribed the use of a wheelchair during July 2014, that prescription was absent a physical examination.  (Exhibit 27F [(R. 713-14)]).  The prescribing physician had not examined the claimant since he presented with a "slight" decrease in motor function in his lower extremities during December 2013, and a physical exam administered by a different treatment provider during July 2014 only yielded evidence of diffuse back pain upon palpation.  (Exhibits 28F/4, 29F/5 [(R. 718, 729)])

(R. 18-19).  The evidence to which the ALJ cited supports his findings, and Plaintiff does not argue otherwise.

Instead, Plaintiff argues that the ALJ erred in assigning no weight to Dr. Penn's opinions because they were on issues reserved to the Commissioner.  Plaintiff is correct that opinions regarding issues reserved to the Commissioner may not be ignored, but neither will they be given any special significance or controlling weight.  20 C.F.R. § 416.927(c)(d)(2 & 3); SSR 96-5p, West's Soc. Sec. Reporting Serv. 123-24 (Supp. 2015); SSR 96-8p, West's Soc. Sec. Reporting Serv. 150, n.8 (Supp. 2015).  If a treating source opinion is not given controlling weight, opinions regarding issues reserved to the Commissioner will be weighed, just as all other medical opinions, in accordance with the

regulatory factors for weighing medical opinions.  Id. § 416.927(c); SSR 96-5p, West's

Soc. Sec. Reporting Serv. 123-24 (Supp. 2015).

That is what the ALJ did here.  And, he provided a thorough explanation of his

consideration of Dr. Penn's opinions:

> By comparison, I give no weight to the August 2013 and February 2014
> statements of David J. Penn, M.D. of the Cotton-O'Neil Clinic that the
> claimant is "unable to work" due to his pain.  (Exhibits 20F, 22F [(R. 603-
> 04, 608-09)]).  A statement that a claimant is "unable to work" is not a
> medical opinion.  Rather, it is an administrative finding dispositive of a
> case. Such findings are reserved to the Commissioner of Social Security.
> Statements on issues reserved to the Commissioner are not entitled to any
> special significance, even if rendered by a treating source.  (SSR 96-5p).
> Additionally, the probative value of Dr. Penn's statement is limited because
> it fails to assess the claimant's ability to perform specific work-related
> activities on a regular and continuing basis.  For example, he does not
> specify how much the claimant can lift and carry either frequently or
> occasionally.  Most significantly, Dr. Penn's opinion is not consistent with
> the weight of the evidence as a whole.  As is detailed above, the claimant
> did not present with extreme, persistent motor, sensory, reflex, or strength
> deficits that would support a conclusion that he is "unable to work."  Of
> particular note are the findings of the final two examinations of the claimant
> performed by Dr. Penn:  the claimant merely presented with generalized
> weakness during July 2013 and a "slight" decease in lower extremity motor
> function during December 2013.  (Exhibit 28F/4, 8 [(R. 718, 722)]).  Those
> findings and the claimant's consistently conservative treatment are not
> consistent with Dr. Penn's conclusions.  I also note that, a mere five months
> before Dr. Penn issued the August 2013 statement, he was able to exercise
> in the gym of Stormont Vail, including playing basketball.  He "[a]lso
> played badminton with vigor, running and jumping without difficulty."
> (Exhibit 14F/13, 16 [(R. 564, 567)]).  Based upon the totality of the
> foregoing, I give no weight to the August 2013 and February 2014
> statements of Dr. Penn.

> Similarly, I give no weight to Dr. Penn's July 2014 Certification of
> Disability for Disabled Parking Placard and/or Plate, on which he indicated
> the claimant is "[s]everely limited in [his] ability to walk at least 100 feet
> due to an arthritic, neurological or orthopedic condition."  (Exhibit 19E [(R.

378-80)]).  As is indicated above, such a conclusion is not consistent with
the medical evidence.  Dr. Penn, who last examined the claimant during
December 2013, did not note the claimant to possess any extreme functional
deficits on exam that would support a conclusion that he is "severely
limited in [his] ability to walk at least 100 feet."

(R. 20-21).  Plaintiff does not attempt to show error in the rationale upon which the ALJ

based his decision to accord no weight to Dr. Penn's opinions.  Rather, he baldly asserts

that "[t]he ALJ's reasons are not sufficient to discount the opinions."  (Pl. Brief 24)

(citing Fuller v. Astrue, 766 F. Supp. 2d 1149, 1160 (D. Kan. 2011)).  The opinion cited

by Plaintiff does not require a finding that the ALJ's reasons to discount Dr. Penn's

opinions are insufficient.

In Fuller, a medical doctor practicing occupational medicine, Dr. Kopravica,

performed an independent medical evaluation of the plaintiff.  766 F. Supp. 2d at 1159.

Dr. Kopravica found that the plaintiff had a severe psychological overlay to his pain

suggestive of somatization, suggested that the plaintiff should be evaluated from a

psychological/psychiatric standpoint, and concluded that the plaintiff's physical

impairments alone were not disabling, but "if the mental health care expert places validity

on [the plaintiff's] pain presentation [Dr. Kopravica] did not believe [the plaintiff] is

employable."  Id.  The ALJ, in Fuller divided Dr. Kopravica's linked opinions, according

substantial weight to the opinion that the plaintiff's physical impairments alone were not

disabling, but little weight to the opinion that the plaintiff was disabled if his pain

presentation was valid.  Id. at 1159-60.  The ALJ rejected Dr. Kopravica's opinion that

the plaintiff was disabled if his pain presentation was valid, because the plaintiff

consistently exaggerated his symptoms and because the opinion regarding disability was on an issue reserved to the Commissioner.  Id. 766 F. Supp. 2d, at 1160.

This court found error in Fuller, because Dr. Kopravica had recognized that the plaintiff consistently exaggerated his symptoms but nonetheless opined that the plaintiff was disabled if the plaintiff believed his complaints of pain, had linked his opinions, and his opinion on an issue reserved to the Commissioner "may not be disregarded, and 'the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.'" Id. (quoting SSR 96-5p).  In other words, this court in Fuller found that the determination to discount Dr. Kopravica's opinion because the plaintiff consistently exaggerated his symptoms was error, leaving the fact that the opinion was on an issue reserved to the Commissioner as the only basis to reject the opinion.  Alone, that is an insufficient basis to reject a medical opinion, and the court found that remand was necessary.  Here, on the other hand, the ALJ "evaluate[d] all of the evidence in the case record [and] determine[d] the extent to which [Dr. Penn's] opinion is supported by the record."  As quoted above, the ALJ provided at least five reasons to discount Dr. Penn's opinions in addition to the fact that the opinions were on an issue reserved to the Commissioner.

Finally, the court finds no error in the fact that the ALJ did not recontact Dr. Penn to clarify the physician's opinions.  The regulations were changed more than two years before the hearing in this case, giving adjudicators greater flexibility in obtaining information necessary to make a disability determination, and they no longer require that

an ALJ first recontact a treating source to resolve an inconsistency or insufficiency in the evidence that source provides to the Social Security Administration.  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012) (effective March 26, 2012).  Moreover, Plaintiff has shown no basis to recontact Dr. Penn under the standard applicable before March 26, 2012.  As Plaintiff suggests, the former regulation required a medical source to be recontacted when the report from that medical source contains a conflict or ambiguity that must be resolved, does not appear to be based on acceptable clinical and laboratory diagnostic techniques, and does not contain all of the information necessary to a decision.  20 C.F.R. § 416.912(e)(1) (2011).

Here, the ALJ did not suggest in any way that Dr. Penn's opinion is not based on acceptable clinical and laboratory diagnostic techniques or that he omitted certain information necessary to a decision.  And Plaintiff does not point to such insufficiency.  Moreover, Plaintiff does not point out a conflict or ambiguity in Dr. Penn's report requiring resolution, and the ALJ did not recognize such a deficiency in the report.  The mere fact that an ALJ discounted the opinion of a medical source has never been sufficient to require that he recontact the medical source, and it certainly does not have that effect under the controlling regulations when Plaintiff's case was decided.  Were it otherwise, the meticulous and somewhat cumbersome system used by the agency would become virtually unworkable.  As quoted above, the ALJ explained why he discounted Dr. Penn's opinions.  His reasons are supported by the record evidence, and Plaintiff has not shown otherwise.  The court finds no error in the evaluation of Dr. Penn's opinions.

12

## III.    Credibility

In his final argument, Plaintiff claims the ALJ failed "to conduct a proper credibility analysis," because Mr. "Balocca's statements regarding his limitations were improperly disregarded," and "the ALJ failed to consider the limitations testified to by [Mr.] Balocca."  (Pl. Br. 26).  He claims that "[t]he ALJ's reasons for discrediting [Mr.] Balocca's testimony were not sufficient to show why it should not be accepted and considered in assessing . . . RFC."  Id.  Plaintiff then summarizes the law applicable to a credibility determination.  Id. at 26-28 (citing Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987); 20 C.F.R. § 416.929; and SSR 96-7p, Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements).  Plaintiff argues that the ALJ erred in finding that his treatment has been limited to just taking narcotic pain medication and erred in relying on the performance of sports activities, and that the ALJ did not consider all of the credibility factors related to his pain.  (Pl. Brief 28-29).  The Commissioner argues that the ALJ provided legitimate reasons for discounting the credibility of Plaintiff's allegations, points to record evidence supporting the ALJ's credibility determination, and argues that the ALJ's credibility finding "should not be disturbed on review."  (Comm'r Br. 10-11).

### A.    Credibility Standard

As Plaintiff's Brief suggests, the framework for a proper credibility analysis is set out in Luna, 834 F.2d 161.  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so,

whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

14

"Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

### B.    The ALJ's Credibility Findings

In his decision, the ALJ noted the applicable standard he applied to his credibility determination, and summarized Plaintiff's allegations of disabling symptoms.  (R. 17-18) (citing 20 C.F.R. § 416.929; SSR 96-4p and SSR 96-7p).  He found that Plaintiff had medically determinable impairments, and that there was a loose nexus between those impairments and Plaintiff's allegations of symptoms.  Id.  Therefore, he considered all of the evidence, both objective and subjective to evaluate the credibility of Plaintiff's allegations.  Id. at 18-22.  He found Plaintiff's allegations "not entirely credible for the reasons explained in []his decision."  (R. 18).  The court discerns at least three specific reasons articulated by the ALJ to discount Plaintiff's allegations:  Plaintiff's allegations are not supported by the objective medical evidence showing mild, normal, and otherwise not significant findings.  Id.  His allegations are not supported by his treatment history in that his "treatment has been limited to the use of narcotic medications since well before his alleged onset date of disability."  Id.  And, Plaintiff's "allegations regarding the seriousness of his musculoskeletal pain are inconsistent with his demonstrated ability to

15

function while admitted for treatment during March 2013.  At that time, [Plaintiff] was noted to exercise in the gym of Stormont Vail, including playing basketball.  [Plaintiff] '[a]lso played badminton with vigor, running and jumping without difficulty.'" <u>Id.</u> at 19 (citing Ex. 14F/13, 16 (R. 564, 567)).

### C.      Discussion

Plaintiff's argument that the ALJ erred in finding that Plaintiff's "treatment was limited to just taking narcotic medication" (Pl. Br. 28) is without merit.  Plaintiff argues that the record shows additional treatment because he "previously received epidural steroid injections . . . that were not ultimately beneficial." <u>Id.</u> (citing R. 467, 475). Plaintiff is correct that he has previously received epidural steroid injections in November of 2008.  (R. 467, 475).  But, as the ALJ specifically noted that additional treatment was "well before his alleged onset date of disability" on June 29, 2012.  (R. 18).  That finding is not erroneous.

Plaintiff's appeal to the ALJ's reliance on his playing of basketball and badminton is equally ineffectual.  As the ALJ noted, treatment records from Stormont Vail Healthcare dated March 8, 2013 reveal that Plaintiff was "in gym group and was participating while shooting baskets with provider and other [patients]."  (R. 567).  The next day's note records that "[d]uring gym patient was doing L-seats on equipment and crunches on same machine.  Also played badminton with vigor, running and jumping without difficulty."  (R. 564).

Plaintiff argues that the law of the Tenth Circuit is that "intermittent performance of activities, even those such as working on cars, driving on long trips, or even jogging, does not mean that a person can work full time." (Pl. Brief 28) (citing Frey v. Bowen, 816, F.2d 508, 516-17 (10th Cir. 1987)). Plaintiff is correct that the Tenth Circuit holds that the sporadic performance of daily activities does not establish that an individual is capable of substantial gainful activity. However, that was not the purpose of the ALJ's finding regarding playing basketball and badminton in this case. Rather, the ALJ noted that those activities are inconsistent with Plaintiffs "allegations regarding the seriousness of his musculoskeletal pain." (R. 19). Moreover, although Plaintiff testified that he played badminton for only five minutes or so, that he shot five or six baskets, and that there was "no running and jumping or playing a game" (R. 44), that testimony does not match the tenor of the medical records as to these events: The records do not reflect an individual merely hanging out at the gym, participating minimally because he was required to do so. Once again the record evidence supports the ALJ's finding.

Plaintiff does not even address the ALJ's finding that Plaintiff's allegations are not supported by the objective medical evidence, but instead, he argues that the ALJ did not consider all of the credibility factors relating to pain. (Pl. Brief 29). This argument is also unavailing.

Here, the ALJ specifically stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR

416.929 and SSRs 96-4p and 96-7p." (R. 17). Then, he specifically summarized the factors he considered in his credibility determination, including each of the factors alleged by Plaintiff not to have been considered: "the location, duration, frequency, and intensity of pain; . . . precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate pain; . . . treatment, other than medication, for relief of pain; . . . [and] measures other than medication used to relieve pain." Id. The general practice is for a court to take a tribunal at its word when it says it has considered a matter. Hackett, 395 F.3d at 1172-73. The only evidence suggested by Plaintiff to demonstrate the ALJ's alleged failure to consider these pain factors is his own hearing testimony, and the court finds therein no reason to depart from the general practice in this case.

According the ALJ's credibility determination the deference it is due, and for the reasons discussed above, the court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 24th day of March 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**


18